Ernest R. AUTREY, Plaintiff,

v.

COMMODITY CREDIT CORPORA-TION, Defendant.

Civ. A. No. 591.

United States District Court
W. D. Arkansas, Texarkana Division.
July 9, 1956.

---

LeRoy Autrey, Texarkana, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

LEMLEY, Chief Judge.

This cause having been tried to the Court, and the Court being well and fully advised, doth make and file herein the following Findings of Fact, Conclusions of Law, and Memorandum Opinion, to-wit:[1]

### Findings of Fact

1. This is an action brought by Ernest R. Autrey, a citizen of Miller County, Arkansas, against Commodity Credit Corporation, an agency of the United States, for a declaratory judgment to the effect that an assessment of a deficiency

---

1. Originally, we filed findings of fact and conclusions of law in this case together with a memorandum opinion in the form of a signed copy of a letter to counsel on both sides; thereafter the Department of Agriculture, the Department of Justice, and the United States Attorney's office requested us to put said findings, conclusions and memorandum opinion in shape for publication and to publish them, which has now been done. No changes in substance have been made, minor changes in verbiage only.

of $1,123.54 against the plaintiff with respect to a certain loan made to him by the defendant in October, 1954, was invalid, and to recover from the defendant the amount of said deficiency which was withheld by the latter from the proceeds of a loan made to plaintiff in 1955. Both of said loans were made in connection with the rice price support program established by the Agricultural Act of 1949, 7 U.S.C.A. § 1421 et seq. The defendant denies that the plaintiff is entitled to any relief herein.

2. On October 26, 1954, plaintiff borrowed from the defendant the sum of $8,611.44, which loan was evidenced by a "Producer's Note and Loan Agreement," executed on an official form prescribed by the defendant, and bore interest at the rate of 3½% per annum, and was payable on or before February 22, 1955. As collateral security for this loan the plaintiff pledged to the defendant a quantity of rice produced by him during the crop year of 1954, and which was stored on a "modified commingled" basis in the warehouse of Farmers Grain & Elevator Company in Texarkana, Texas; at the time the loan was made the plaintiff endorsed and delivered to the defendant the warehouse receipt covering said rice.

3. Under the provisions of the note and loan agreement and of the applicable regulations the plaintiff remained responsible for the quality of his rice up until the time the loan was discharged; under his contract and the regulations the plaintiff had a right to discharge his loan either by paying it off in cash or by surrendering the rice in accordance with the terms and subject to the provisions of said contract and regulations, and when the note became due, plaintiff elected the latter method of settlement. In that connection the contract and regulations provided that if the settlement value of the rice at the time of delivery should exceed the amount of the loan, the excess would be paid over to the borrower, but further provided that if such settlement value should be less than the amount of the loan, then the borrower would be liable for the deficiency plus interest, and that

such deficiency might be offset against any sums coming due the borrower from the defendant or the Government. The settlement value of the rice was to be computed on the basis of official lot inspection certificates, dated subsequent to February 15, 1955, and it was the primary duty of the borrower to furnish such certificates; the regulations provided, however, that should a borrower fail to furnish such a certificate, the defendant would have the right to have the rice inspected and graded and charge the cost of such inspection and grading to the borrower.

4. The loan to the plaintiff was based upon a sample inspection certificate showing that the rice was U. S. No. 2 Zenith rough rice, with a milling yield of 39%–64%, and with a moisture content of 12.2%; said certificate expressly recited that it applied only to the sample described. As indicated, the plaintiff elected to discharge his loan by surrendering his rice, but he failed to furnish the defendant with an official lot inspection certificate, and on March 1, 1955, when the defendant took the rice over, it caused a sample to be taken by a Mr. Hebert, a sampler for the Agricultural Marketing Service of the United States Department of Agriculture; when that sample was graded, it was found that the lot of rice was U. S. No. 2 Zenith rough rice, with a milling yield of 39%–61% on account of "seed and heat-damaged kernels," and with a moisture content of 12%. That grade produced the deficiency here in question; demand was made on the plaintiff to pay the deficiency, which he declined to do; and, as stated, when plaintiff borrowed from the defendant on his 1955 crop of rice, the amount of the deficiency was withheld from his loan. This suit followed.

5. In support of his action the plaintiff makes two contentions: First, that the rice was not fairly and properly sampled by Hebert, and that the grade obtained from that sample did not represent the true quality of the rice; and, second, that in any event no deficiency could be lawfully assessed against him in

view of the provisions of 7 U.S.C.A. § 1425, which statute reads as follows:

"No producer shall be personally liable for any deficiency arising from the sale of the collateral securing any loan made under authority of this Act unless such loan was obtained through fraudulent representations by the producer. This provision shall not, however, be construed to prevent the Commodity Credit Corporation or the Secretary from requiring producers to assume liability for deficiencies in the grade, quality, or quantity of commodities stored on the farm or delivered by them, for failure properly to care for and preserve commodities, or for failure or refusal to deliver commodities in accordance with the requirements of the program."

The defendant denies the validity of both contentions.

6. Without stopping to go into detail, the Court finds that the plaintiff's rice was "core sampled" by Mr. Hebert on March 1, 1955, and that this method did not produce a fair and representative sample of the rice; the Court further finds, however, that the plaintiff was not prejudiced by the method of sampling just mentioned, but was in fact benefited thereby since the grade and quality of the sample so obtained were higher than would have been the case had the rice been properly sampled. In making this finding the Court credits the testimony of Mr. Lee Regan, a qualified grader of the Agricultural Marketing Service, who testified as an expert, and whose qualifications were admitted by the plaintiff. No complaint is made by the plaintiff as to the grading of Mr. Hebert's sample.

## Conclusions of Law

1. The Court has jurisdiction of this action and of the parties thereto.

2. Since the Court has found that the plaintiff was not prejudiced but was in fact benefitted by the method of sampling employed by Mr. Hebert, the former is not entitled to any relief upon the theory that his rice was unfairly or improperly sampled.

3. For the reasons stated in the following memorandum opinion the Court concludes that the assessment of the deficiency here involved was not precluded by 7 U.S.C.A. § 1425, and that the regulations requiring a producer to assume personal liability for deficiencies in quality of rice stored in a warehouse on a "modified commingled" basis, as was the plaintiff's, do not conflict with that statute and are valid.

4. Plaintiff's rice was constructively delivered to the defendant in pledge at the time the loan was made and the warehouse receipt covering said rice was endorsed and delivered to the defendant; but it was not actually and finally delivered until it was taken over by the defendant on March 1, 1955, and it was as of that time that its settlement value was to be determined. The determination and assessment of the deficiency challenged by the plaintiff were in accordance with the contract and the regulations, and were legal and valid.

5. Let a judgment be entered dismissing this case with prejudice and at the cost of the plaintiff.

## Memorandum Opinion

As heretofore indicated, we have found as a fact that although the grain sampler, Mr. Hebert, did not take a fair and representative sample of the plaintiff's rice when the same was taken over by the defendant on March 1, 1955, nevertheless the plaintiff was not prejudiced thereby since the sample obtained by Hebert was higher in quality and resulted in a better grade for the lot of rice than would have been obtained had the bin been properly sampled. That finding leaves in the case only the legal question of whether or not in view of the provisions of 7 U.S.C.A. § 1425, heretofore quoted, the defendant had a right to assess a deficiency against the plaintiff, which question has now been briefed by both sides.

Without stopping to set forth in detail the contentions of the parties, or

to discuss the legislative and administrative history of the statute, which we deem unnecessary, we agree with the defendant in its contention that Congress in adopting Section 1425 simply intended to absolve producers from personal liability for loan deficiencies resulting from sales of pledged commodities at price levels lower than the support prices in force at the time the loans were made, while leaving the Corporation free to require such borrowers to assume personal liability for deficiencies in quantity, quality or grade of the pledged commodities, or for failure to properly preserve and care for such commodities, or for failure or refusal to make delivery of the same to the Corporation.

We likewise agree with the defendant that as far as the power of the Corporation to provide for and enforce the personal liability of a borrower is concerned, the statute makes no distinction between rice that is stored on the farm and rice that is stored in a warehouse. The power of the Corporation in that regard, under the plain wording of the statute, extends not only to commodities that are farm stored, but also to such as may be "delivered" by the borrower to the Corporation. Rice stored in a warehouse by a borrower is rice that is "delivered" to the Corporation; it is constructively delivered in pledge when the loan is made and the warehouse receipt endorsed and delivered to the defendant; and it is actually and finally delivered when the Corporation takes it over upon the borrower's failure to discharge his loan in cash; and it is at that latter time that its settlement value must be determined.

Applying the statute, as so construed, to the facts as we have found them to exist, we are satisfied that it did not prohibit the assessment of the deficiency of which the plaintiff complains. In the first place, when the word "sale," appearing in the statute, is given its usual and ordinary meaning, it would appear to mean a sale of the commodity on the market and would not include a mere surrender by the pledgor to the pledgee of a pledged chattel, which is what is involved here. But assuming for purposes of argument that such a surrender is a "sale" within the meaning of the statute, the fact remains that here the deficiency did not arise or result from the "sale;" it did not come about because the Corporation took over the rice, but because the rice did not measure up in quality to the sample upon which the loan was based.

The plaintiff argues that he should not be subject to personal liability because, as he contends, the rice was not under his control while it was in the warehouse. That may be true, but even so it affords him no basis for relief. As stated, the statute does not differentiate between farm stored and warehouse stored rice, and the regulations of the Corporation, which were part of plaintiff's contract, and with notice of which he was charged, provided for the assessment of the deficiency, and, in our estimation, the plaintiff when he warehoused his rice and made his loan, assumed the risk that there would be a deficiency in quality for which he would be held responsible. The plaintiff was not required to warehouse his rice; he could have kept it on the farm and retained control over it while remaining responsible for both quantity and quality; or he might well have warehoused it on a "fully commingled" basis and escaped responsibility for either quantity or quality, the warehouseman becoming an insurer of both. As it was, he warehoused it as "modified commingled," and thereby avoided responsibility for quantity while remaining responsible for the quality thereof.

We see nothing in the regulations that conflicts with the statute, and since the deficiency was assessed in accordance with the regulations, it follows that plaintiff's action must be dismissed with prejudice and at his cost.